**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALLAN R. SCHOENBERG,
Plaintiff-Appellant,

v.

E. I. DUPONT DE NEMOURS &
COMPANY,
Defendant-Appellee.

No. 97-2589

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CA-97-109-1)

Submitted: June 16, 1998

Decided: June 29, 1998

Before LUTTIG and MICHAEL, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert J. Deutsch, POWELL & DEUTSCH, Asheville, North Caro-
lina, for Appellant. Ronald G. Polly, Jr., MCCULLOUGH SHER-
RILL, Atlanta, Georgia; Raymond Michael Ripple, Donna L.
Goodman, E.I. DUPONT DE NEMOURS & COMPANY, Wilming-
ton, Delaware, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Allan R. Schoenberg appeals the district court's order granting summary judgment to E. I. du Pont de Nemours & Company ("DuPont" or the "Company") on his breach of contract claim. Finding no errors, we affirm.

I.

Schoenberg, a former DuPont employee, began his career with the Company in 1974 as a research chemist. In 1977, he was transferred to DuPont's Diagnostic Imaging facility in Brevard, North Carolina, which produces x-ray film. While at Brevard, Schoenberg worked to develop a new x-ray film which would be faster, age without fogging, and have a lower coating weight. Between 1980 and 1983, Schoenberg worked on this project with his supervisor, Raymond LeStrange, and another employee, John Bayless. Ultimately, the three developed the "Improved Emulsion Sensitization Using Cysteine" process ("cysteine process").

For decades, DuPont has utilized recognition programs, whereby employees may be rewarded for exceptional performance.[1] In 1981, DuPont first put in writing its Special Compensation Plan (the "Plan"). One of the stated purposes of the Plan is "to provide greater incentive for employees continually to exert their best efforts . . . by rewarding them for services rendered with compensation that is in addition to their regular salaries."[2]  In 1989, Schoenberg, along with his colleagues, LeStrange and Bayless, received a Special Compensation Award from DuPont for their contribution to the development of the cysteine process. The award totaled $37,000, of which Schoen-

_____
[1] **See** J.A. at 193.
[2] **Id.** at 304.

2

berg, LeStrange, and Bayless received $15,000, $15,000, and $7500, respectively.

In 1990, DuPont produced and distributed a video entitled "Career Systems Accomplishment Awards" which explained the Company's Special Compensation Plan. After viewing the video, Schoenberg requested that his supervisor submit an application for an increase of his Special Compensation Award. Although his supervisor approved the request, DuPont rejected the application. In December 1995, Schoenberg again requested an adjustment of his award. This request was likewise denied. In June 1996, Schoenberg received a letter from in-house counsel for DuPont, once again rejecting the increase.

In March 1997, Schoenberg filed the instant action, seeking damages for breach of contract. Specifically, Schoenberg claimed that DuPont was contractually obligated to pay him additional compensation pursuant to the Special Compensation Plan. The district court granted DuPont's motion for summary judgment, finding that Special Compensation Awards were within DuPont's "total discretion" and that "no contract resulted simply from the existence of the Special Compensation Award Plan."[3] Alternatively, the district court found that the statute of limitations barred Schoenberg's claim.

Schoenberg appeals the district court's determinations. He contends that the district court improperly granted summary judgment because there exist genuine issues of material fact regarding whether the Special Compensation Plan was contractual or discretionary, what documents or oral communications constitute the Plan, whether DuPont complied with the terms of the Special Compensation Plan, and whether his claim is barred by the applicable statute of limitations.

II.

We review the district court's granting of summary judgment de novo.[4] Summary judgment is appropriate when "the pleadings, depo-

_____

[3] **Schoenberg v. E. I. du Pont de Nemours & Co.**, CA-97-109-1, slip op. at 7 (W.D.N.C. Oct. 9, 1997) (hereinafter "Memorandum and Order").
[4] **See United States v. Leak**, 123 F.3d 787, 791 (4th Cir. 1997) (citation omitted).

3

sitions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5] The court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party."[6]

A.

DuPont's Special Compensation Plan, which is administered by the Executive Committee of the Company's Board of Directors, provides in part:

> Awards under this Plan <u>may</u> be granted for conspicuous service of any nature beneficial to the Company and involving performance by an employee substantially beyond that which might be expected of one occupying his or her position . . . .[7]

With regard to the granting of awards, the Plan states:

> [A]ny award granted to an employee who is not a member of the Board of Directors shall be made in the <u>sole discretion of the Executive Committee</u> which shall take final action on any such award.[8]

Schoenberg contends that a genuine issue of material fact exists as to whether the Special Compensation Plan was contractual or discretionary. In support of his argument, Schoenberg relies upon the affidavits of his supervisors and DuPont's "Career Systems Accomplishment Awards" video, which he claims contradict the written terms of the Plan. Specifically, Schoenberg's supervisor, LeStrange, attested that:

> In my capacity as supervisor for DuPont, I always conveyed

---

[5] Fed. R. Civ. P. 56(c).
[6] <u>**Shaw v. Stroud**</u>, 13 F.3d 791, 798 (4th Cir. 1994) (citation omitted).
[7] J.A. at 304 (emphasis added).
[8] <u>**Id.**</u> at 306 (emphasis added).

4

the plan to other employees as non-discretionary. Once an employee qualified for Special Compensation, the amount would be determined by a formula related to the financial benefit to the company.[9]

Similarly, Jon Sherrill, the Laboratory Director of the Brevard Plant in 1989, stated that:

> To the best of my knowledge, none of [DuPont's] methods of compensation are or have been discretionary once an employee qualifies.[10]

We agree with the district court that Schoenberg has failed to produce sufficient evidence showing that the Plan created a contractual obligation. To the contrary, the evidence demonstrates that DuPont retained complete discretion with regard to distributing Special Compensation Awards. The affidavits of Schoenberg's supervisors and the video do not compel a different conclusion. Both supervisors stated that an employee must qualify before receiving a Special Compensation Award. Whether an employee qualified was a decision left to DuPont's total discretion. And, as discussed further below, once DuPont determined that an employee qualified for Special Compensation, the Company still retained discretion to determine the amount of the award to be given. Additionally, a review of the transcript of the video reveals that employees were repeatedly told that Special Compensation Awards were approved, disapproved, or modified by the Executive Committee.[11]

"Before a valid contract can exist, there must be mutual agreement between the parties as to the terms of the contract. Where there is no mutual agreement, there is no contract."[12] Thus, the district court cor-

---

[9] Id. at 381.

[10] Id. at 377.

[11] See id. at 408.
[12] Routh v. Snap-On Tools Corp. , 423 S.E.2d 791, 795 (N.C. App. 1992) (citation omitted).

5

rectly determined that "no contract resulted simply from the existence of the Special Compensation Award Plan."[13]

B.

Schoenberg next contends that a genuine issue of material fact exists as to whether DuPont complied with the terms of the Special Compensation Plan. Specifically, Schoenberg argues that DuPont incorrectly calculated the amount of his Special Compensation, and consequently, he received a much lower award than he was due. We disagree.

The Plan states that two types of Special Compensation Awards are available:

> Where an Award under this Plan is to be granted for services which it is believed will result in continuing financial benefit to the Company, the amount of which is determinable over a period of years, the award shall take the form of a three-part award, based upon profits or savings over a five-year period. . . . If justified by the continued financial benefit resulting from the conspicuous service, second and third awards may, in the discretion of the Executive Committee . . . be made . . . .

> Where an award under this Plan has been recommended for services which it is believed will not result in continued financial benefit to the Company, or which cannot be evaluated in money, the award shall take the form of a <u>first and final award, the amount being determined on such basis as may be fixed by the Executive Committee</u> . . . . [14]

We first note that DuPont was not obligated to pay Schoenberg Special Compensation. Having decided to do so, the Company still

_____

[13] Memorandum and Order at 7. Schoenberg briefly argues that an implied contract existed. However, Schoenberg has not provided sufficient evidence to show that an implied contract was created through acts or conduct in the present case.
[14] J.A. at 305 (emphasis added).

6

retained the discretion to determine which type of award Schoenberg would receive. As the district court noted, Schoenberg received a "first and final award." Although the Company admits that Schoenberg's award fell well below the normal range for Special Compensation Awards, that range was not a requisite, but rather, was in DuPont's discretion. In determining the amount of the award, DuPont took "into account the level, experience and assignments of the recipients as well as the contributions of many others in reducing this technology to practice."[15] Accordingly, we decline to reverse the district court's grant of summary judgment on this ground.

C.

Finally, Schoenberg contends that a genuine issue of material fact exists as to whether his action is barred by the applicable statute of limitations. The district court addressed this question as an alternative ruling.[16] However, having determined that DuPont was not contractually obligated to pay Schoenberg additional compensation, we decline to address the statute of limitations issue.

III.

Based upon the foregoing, we affirm the district court's grant of summary judgment in favor of DuPont. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

_____

[15] J.A. at 337.
[16] See Memorandum and Order at 10.

7